IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARK WEBER, on behalf of himself
and all others similarly situated,

    Plaintiff,

v.

PHILIP MORRIS USA, INC.,

    Defendant.

CASE NO.: _____

**COMPLAINT - CLASS ACTION**

**JURY TRIAL DEMANDED**

    Plaintiff, MARK WEBER, by and through his undersigned attorneys, **RODANAST, P.C.** and **BECNEL LAW FIRM, LLC** brings this action on his own behalf and on behalf of a Class of persons defined below against Defendant, PHILIP MORRIS USA, INC. (hereinafter referred to as "Defendant"), and for his complaint alleges, upon information and belief and based on the investigation to date of his counsel, as follows:

## PARTIES

1. Plaintiff, MARK WEBER, is a resident of the United States of America, State of Pennsylvania, County of Luzerne.

2. Defendant Philip Morris USA, Inc. ("Philip Morris" or "Defendant") is a Virginia corporation with its principal place of business at 6601 West Broad Street, Richmond, Virginia. Philip Morris is a wholly owned subsidiary of Altria. At all times relevant hereto, Philip Morris engaged in the business of designing, manufacturing, promoting, distributing, and selling Marlboro Lights.

## NATURE OF THE CASE AND OVERVIEW

3. This case arises out of the unfair and deceptive practices employed by Defendant from at

least 1971 forward to induce cigarette smokers to continue smoking in spite of the growing public awareness of a connection between cigarette smoking and serious health problems including cancer, by designing, manufacturing, promoting, marketing and selling Marlboro Lights cigarettes purporting to be "light" and having "Lowered Tar and Nicotine," all while Defendant knew those cigarettes would not deliver less tar or nicotine to the consumer.

4. Plaintiff and the proposed Class, purchasers of Marlboro Lights cigarettes in the Commonwealth of Pennsylvania, suffered a loss of money because the cigarettes they purchased were misrepresented by Defendant to be "light" and lower in tar and nicotine, when in reality the cigarettes were not lower in tar or nicotine than regular cigarettes.

5. Plaintiff seeks to represent the following Class:

> All persons who purchased Defendant's Marlboro Lights cigarettes in Pennsylvania for personal consumption from the first date that Defendant placed its Marlboro Lights cigarettes into the stream of commerce.

## FACTUAL ALLEGATIONS

6. Defendant, and/or its predecessors in name, have been in the business of designing, manufacturing, promoting, marketing, distributing, and selling tobacco products, including cigarettes, in the United States for over one hundred (100) years.

7. Prior to 1971, Defendant was aware that beginning in the 1950s, smokers had become increasingly concerned about health issues related to smoking.

8. Beginning in 1971, Defendant designed and manufactured a brand of cigarettes known as Marlboro Lights which they promoted, marketed, distributed, and sold throughout the United States, including Pennsylvania. Each pack of Marlboro Lights bore, in addition to the descriptor "Lights" in the brand name, the phrase "Lowered Tar and Nicotine" on the

packaging.

9. Defendant intentionally marketed Marlboro Lights cigarettes in this manner with the intention of communicating to consumers that Marlboro Lights were less harmful or safer than regular Marlboro cigarettes.

10. Defendant introduced Marlboro Lights into the market with the intent to provide smokers who were concerned about their health with a product that could reduce their concerns about the negative health implications of smoking and thereby allow them to continue to smoke cigarettes.

11. At all relevant times, Defendant sold and packaged Marlboro Lights as "light" and as having decreased tar and nicotine.

12. Nicotine is the addictive ingredient in tobacco. Tar is the toxic ingredient in tobacco that causes most health problems related to smoking.

13. Evidence shows that consumers buying Marlboro Lights or cigarettes understood that tar and nicotine were the "bad" components in cigarettes and, therefore, lower levels of these components would reduce the negative health affects of the cigarette product.

14. The primary design distinction between Marlboro Lights and their regular counterparts is increased ventilation. Defendant increased the ventilation in Marlboro Lights cigarettes by strategically placing rings of vent holes in the filter of each cigarette, such that air is mixed with and dilutes the smoke drawn through the filter.

15. This design distinction of ventilation provides for a lower measurement of tar and nicotine for "lights" as compared to regular cigarettes when undergoing standardized testing by the Federal Trade Commission ("FTC") testing apparatus - automated smoking machines used by the tobacco industry to measure tar and nicotine levels in cigarettes.

16. Defendant controlled the tar and nicotine delivery of Marlboro Lights cigarettes under machine testing conditions to achieve apparent support for their representations that their Marlboro Lights cigarettes are "light" and contain decreased tar and nicotine.

17. At all relevant times, Defendant knew that although the increased ventilation of the "light" cigarettes would result in lower machine test values of tar and nicotine, the consumer would receive the same delivery of tar and nicotine from the "lights" as from regular cigarettes.

18. Scientific research has shown that smokers of "light" cigarettes such as Marlboro Lights cigarettes engage in compensatory smoking behavior due to the addictive nature of nicotine, so as to receive 100% of the tar and nicotine that would be received by the smoker from the regular cigarette. This is known as 100% compensation.

19. Compensatory smoking behavior consists of unconscious acts including, but not limited to: inhaling deeper; taking more frequent puffs and/or larger puffs; holding the smoke in the lungs for a longer period of time; covering the ventilation holes in the filter with the lips or fingers; and/or smoking more cigarettes, thereby enabling the smoker to unconsciously regulate the amount of nicotine and tar received.

20. Defendant had conducted extensive research prior to launching Marlboro Lights into the market, and knew smokers would unconsciously adjust their behavior to ensure they receive the same level of tar and nicotine from the "light" cigarettes as they would receive from their regular counterparts.

21. Defendant knew that Marlboro Lights did not reduce the delivery of tar or nicotine to the consumer, and that these cigarettes were not designed to reduce actual delivery to smokers.

22. Defendant's representations that Marlboro Lights cigarettes are "light" or have "lower tar and nicotine" than regular cigarettes are deceptive and misleading.

23. Not only do consumers receive higher levels of tar and nicotine than the testing apparatus registers, but the smoke produced by Marlboro Lights is more mutagenic (causing genetic and chromosomal damage) per milligram of tar than the smoke of regular cigarettes due to the increased ventilation.

24. Defendant knew, as a result of tests conducted by Philip Morris more than twenty-five years ago, that increased ventilation - the primary design distinction between "light" cigarettes and their regular counterparts - increases the specific mutagenicity of cigarette smoke.

25. Defendant also knew, from tests it conducted, that a smoker of Marlboro Lights cigarettes will receive higher levels of most of the toxic substances found in cigarette smoke from the "light" cigarettes than from their regular cigarette counterparts.

26. Defendant engaged in a course of unfair and/or deceptive business practices in connection with the design, manufacture, distribution, promotion, marketing and sale of Marlboro Lights cigarettes by:
    a. Falsely and/or misleadingly representing that their product is "light" and/or delivers lowered tar and nicotine in comparison to regular cigarettes;
    b. Describing the product as light when the so-called lowered tar and nicotine deliveries depended on deceptive changes in cigarette design and composition that dilute the tar and nicotine content of smoke per puff as measured by the industry standard testing apparatus, but not when used by the consumer;
    c. Intentionally manipulating the design and content of Marlboro Lights cigarettes in

order to maximize nicotine delivery while falsely and/or deceptively claiming lowered tar and nicotine. These manipulations include, but are not limited to, the modification of tobacco blend, weight, rod length, and circumference; the use of reconstituted tobacco sheets and/or expanded tobacco; and the increase of smoke pH levels by chemical processing and additives, such as ammonia, which resulted in the delivery of greater amounts of tar and nicotine when smoked under actual conditions than Defendant represent by use of the "light" description; and

d. Employing techniques that purportedly reduce machine-measured levels of tar and nicotine in Marlboro Lights cigarettes, while actually increasing the harmful biological effects, including mutagenicity (genetic and chromosomal damage) caused by the tar ingested by the consumer per milligram of nicotine.

## FRAUDULENT CONCEALMENT

27. Throughout the Class Period, Defendant effectively, affirmatively, and fraudulently concealed from consumers of their products, including Plaintiffs, their knowing misrepresentations about the nature and effect of their "light" cigarettes.

28. Defendant's wrongful conduct was carried out in part through means and methods that were designed and intended to avoid detection, and which, in fact, successfully precluded detection.

29. Plaintiff and members of the Class could not have discovered Defendant's misrepresentations and were without knowledge of the conduct by Defendant alleged in this Complaint, or of any facts from which it might reasonably be concluded that Defendant was so acting, or which would have led to the discovery of such action.

30. Plaintiffs could not have discovered their cause of action against Defendant because

Defendant's fraudulent concealment of its deceptive conduct was effective.

31. Defendant is estopped from relying on any Statutes of Limitations by virtue of its acts of fraudulent concealment.

32. As a result of Defendant's actions, Plaintiff and the Class were unaware, and could not reasonably know that Defendant was engaged in the wrongdoing alleged herein.

## CLASS ACTION ALLEGATIONS

33. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this action on behalf of themselves and the members of the following proposed Class:

34. The Class is defined as:

> All persons who purchased Defendant's Marlboro Lights cigarettes in Pennsylvania for personal consumption from the first date that Defendant placed its Marlboro Lights cigarettes into the stream of commerce.

Excluded from the Class are (i) each Defendant, any entity in which a Defendant has a controlling interest or which has a controlling interest in any Defendant, and Defendant's legal representatives, predecessors, successors and assigns; (ii) governmental entities; and (iii) Defendant's employees, officers, directors, agents, and representatives and their family members.

35. Plaintiff reserves the right to expand, modify or alter the class definition, including the time period, in response to information learned during discovery.

36. Members of the proposed Class are so numerous that the individual joinder of all absent Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, it is ascertainable by appropriate discovery. Plaintiff is informed and believes based upon the nature and the trade and commerce involved, that the proposed Class includes millions of Class members in Pennsylvania.

37. Common questions of law or fact predominate over any questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

   a. Whether Defendant misrepresented the actual tar and nicotine delivered to consumers of "light" cigarettes they manufactured, marketed, and/or distributed;

   b. Whether Defendant intentionally designed "light" cigarettes to register misleading tar and nicotine measurements on the testing apparatus utilized by the tobacco industry while delivering significantly higher quantities of tar and nicotine to human smokers;

   c. Whether the Defendant was unjustly enriched at the expense of the Class members; and

   d. Whether the Class has been damaged and, if so, the extent of such damages.

38. Plaintiff in this proposed class action asserts claims typical of those of the individual members of the proposed Class. The interests of Plaintiff are consistent with, and not antagonistic to, those of other members of the Class, and Defendant have no defenses unique to Plaintiff.

39. Plaintiff is a member of the Class and will fairly and adequately assert and protect the interests of the Class. Plaintiff has retained attorneys who are experienced in class action litigation.

40. The prosecution of separate actions by individual members of the Class would create risk of:

   a. Inconsistent or varying adjudications with respect to individual members of the Class; and

    b. Adjudication with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

41. The claims of Plaintiff, and the anticipated defenses raised by Defendant, are typical of the claims or defenses of the Class, and the class action method is appropriate for the fair and adequate prosecution of this action.

42. Individual litigation of all claims which might be assessed by all Class Members would produce a multiplicity of cases that the judicial system having jurisdiction of the claims would remain congested for years. Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of Defendant.

43. A Class action is an appropriate method for the fair and efficient adjudication of this controversy and Class action treatment is superior to the alternatives. There is no special interest in the members of the Class individually controlling the prosecution of separate actions. The damages sustained by individual Class members will not be large enough to justify individual actions, especially in proportion to the tremendous costs and expenses necessary to prosecute this action. The expense and burden of individual litigation makes it impossible for members of the Class individually to address the wrongs done to them. Class treatment will permit the adjudication of claims of Class members who could not afford individually to litigate their claims against Defendant. Further, as a result of Defendant's concealment, millions of Pennsylvanians remain unaware that they have been injured and will not be aware of Defendant's fraud, or the extent and nature off their

injury, in the absence of this Class action. Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this Class action that would preclude its maintenance as a Class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Furthermore, Defendant transacts substantial business in Pennsylvania and throughout the United States. Defendant will not be prejudiced or inconvenienced by the maintenance of this Class action in this forum.

### FIRST CAUSE OF ACTION AGAINST
(Violation Consumer Fraud Statutes)

44. Plaintiff MARK WEBER, individually and on behalf of all others similarly situated, repeats, reiterates and realleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effects as if fully set forth herein.

45. Defendant engaged in consumer-oriented, commercial conduct by selling and advertising the subject product.

46. Defendant misrepresented and omitted material information regarding the subject product by failing to disclose known risks.

47. Defendant's misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and advertisement of the subject product.

48. Pennsylvania has enacted statutes to protect consumers from deceptive, fraudulent, and

unconscionable trade and business practices. Defendant violated these statutes, including but not limited to 73 Pa. Stat. Ann. § 201-1, *et seq.*, by knowingly and falsely representing that the subject product was fit to be used for the purpose for which it was intended, when Defendant knew it was defective and dangerous, and by other acts alleged herein.

49. Defendant engaged in the deceptive acts and practices alleged herein in order to sell the subject product to the public, including Plaintiff.

50. As a direct and proximate result of Defendant's actions, Plaintiff and Plaintiff Class Members have suffered damages, for which they are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
### (Breach of Express Warranty)

51. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

52. Defendant expressly warranted that its product was safe and well accepted by users.

53. Marlboro Lights does not conform to these express warranties because the product is not safe and did not contain lower amounts of tar or nicotine.

54. Plaintiff and Plaintiff Class Members did rely on the express warranties of Defendant herein.

55. Defendant breached the aforesaid express warranties.

56. Defendant expressly represented to Plaintiff and Plaintiff Class Members that Marlboro Lights contained lower amounts of tar and nicotine and hence that it was less harmful or safer than regular Marlboro cigarettes.

57. Defendant knew or should have known that the aforesaid representations and warranties are false, misleading and untrue in that Marlboro Light Cigarettes did not contain less tar and nicotine.

58. As a result of the foregoing acts and omissions, Plaintiff and Plaintiff Class Members required more health care and services and did incur medical, health, incidental, and related expenses.

### THIRD CAUSE OF ACTION
### (Breach of Implied Warranty)

59. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

60. At all times herein, Defendant manufactured, compounded, portrayed, distributed, recommended, merchandised, advertised, promoted, and sold Marlboro Lights.

61. At the times Defendant marketed, sold, and distributed Marlboro Lights for use by Plaintiff and Plaintiff Class Members, Defendants knew of the use for which Marlboro Lights were intended and impliedly warranted the product to be of a certain quality.

62. Said representations and warranties aforementioned are false, misleading, and inaccurate in that Marlboro Lights are just as unsafe, unreasonably dangerous, and contain the levels of tar and nicotine consistent with Defendant's regular brand of cigarettes.

63. Plaintiff and Plaintiff Class Members relied on said implied warranty of merchantability of fitness for a particular use and purpose.

64. Defendant breached the aforesaid implied warranties; Marlboro Lights were not fit for its intended purposes and uses.

65. As a result of the foregoing acts and omissions, Plaintiff and Plaintiff Class Members required more health care and services and did incur medical, health, incidental, and related expenses.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment as requested above against Defendant and further prays for:

(a) An order certifying the Class proposed herein and appointing Plaintiff and his counsel to represent the Class;

(b) Restitution to Plaintiff and the Class as provided by law;

(c) Disgorgement of all monies unjustly received through Defendant's unlawful conduct, together with interest;

(d) Declaration that the actions and/or omissions of Defendant as described herein are unlawful, illegal, and in violation of Pennsylvania law as set forth herein;

(e) A permanent injunction against Defendant forbidding them from hereinafter undertaking the unlawful actions and/or omissions described herein;

(f) Actual damages;

(g) Exemplary or punitive damages as provided by law;

(h) Statutory prejudgment interest;

(i) Reasonable attorneys' fees and the costs of this action;

(j) Legal and equitable relief under the causes of action stated herein; and

(k) Such other relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff, MARK WEBER, individually and on behalf of the Plaintiff Class Members,

hereby demands a trial by jury as to all issues so triable.

Dated: October 1, 2009                              Respectfully submitted,

/s/ ECB 8062
Dianne M. Nast
Erin C. Burns (ECB 8062)
RodaNast, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
Telephone: 717-892-3000
Facsimile: 717-892-1200
dnast@rodanast.com
eburns@rodanast.com

Daniel E. Becnel, Jr.
Matthew Moreland
Salvadore Christina, Jr.
Becnel Law Firm, LLC
P.O. Drawer H
Reserve, LA 70084
Telephone:    985-536-1186
Facsimile:    985-536-6445
dbecnel@becnellaw.com

Jerrold S. Parker
Andres F. Alonso
David B. Krangle
Parker Waichman Alonso LLP
111 Great Neck Road, 1st Floor
Great Neck, New York 11021
Telephone: 516-466-6500
Facsimile: 516-466-6665
Email: DKrangle@yourlawyer.com